**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-80540-STRAUSS**

**CHARLEY ROBERSON,**

     Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY,**

     Defendant.

_____/

<u>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**</u>

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 8] and Defendant's Cross-Motion for Summary Judgment ("Defendant's Motion") [DE 11].  I have reviewed both motions, Plaintiff's Reply [DE 12], and all other pertinent portions of the record.  For the reasons discussed herein, Plaintiff's Motion [DE 8] will be **DENIED** and Defendant's Motion [DE 11] will be **GRANTED**.

## I.     **BACKGROUND & PROCEDURAL HISTORY**

On December 14, 2022, Plaintiff applied for supplemental security income (SSI).  Tr. 18, 268-76.  His claim was denied initially and upon reconsideration.  *See* Tr. 18, 116-33.  Thereafter, on October 24, 2024, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"), at which Plaintiff and a vocational expert testified.  Tr. 42-72.  On December 17, 2024, the ALJ issued a decision finding that Plaintiff was not disabled.  Tr. 18-35.  On March 6, 2025, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner.  Tr. 1-3.  Consequently, on May 5, 2025, Plaintiff commenced this action seeking review of the Commissioner's decision.

## II.   STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence."  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  It "is something 'more than a mere scintilla, but less than a preponderance.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted).  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."  *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]."  *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239.  In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards.  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.   DISCUSSION

### A.  THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  To arrive at a disability determination, the ALJ must undertake the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.

The first step requires the ALJ to determine whether the claimant is presently engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  If so, a finding of "no disability" is made.  If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment."  An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. § 416.920(c).  If no severe impairment is found, then the ALJ will conclude that the claimant is not disabled; if a severe impairment is found, then the ALJ will proceed to the next step of the sequential evaluation.  *See* 20 C.F.R. § 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations.  20 C.F.R. § 416.920(d).  If so, the ALJ will find the claimant disabled without considering age, education, and work experience.  20 C.F.R. § 416.920(d).  If not, the inquiry will proceed to the next step.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 416.920(e).  The Regulations define RFC as "the most you can still do despite your limitations."  20 C.F.R. § 416.945(a)(1).  The RFC determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others.  20 C.F.R. § 416.945(a)(3).  The ALJ must compare the claimant's RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. § 416.920(f).

If the claimant establishes an inability to return to past relevant work (or does not have past relevant work), the inquiry turns to step five.  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the

3

claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs.  *Id.*  At this fifth and final step, the ALJ must resolve whether the claimant is capable of performing other work that exists in significant numbers in the national economy.  *See* 20 C.F.R. §§ 416.920(g), 416.960(c).

### B. ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff is not disabled.  Tr. 35.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 14, 2022, the date Plaintiff applied for SSI.  Tr. 21.  At step two, the ALJ found that Plaintiff has the severe impairments of diabetes mellitus (including non-pressure chronic ulcer of the right toe), neuropathy, and hypertension.  Tr. 21.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 25.

The ALJ next assessed Plaintiff's RFC, determining based on her consideration of the entire record that Plaintiff has the RFC:

> to perform light work as defined in 20 CFR 416.967(b) except the claimant can stand and walk 4 hours in an 8-hour workday. He can occasionally climb ramps, stairs, ladders, ropes or scaffolds. The claimant can frequently balance on level surfaces and occasionally on uneven terrain. He can frequently stoop, kneel, and can occasionally crouch and crawl.

Tr. 26.  Because Plaintiff does not have past relevant work, the ALJ proceeded to step five after determining Plaintiff's RFC.  Tr. 33.  At step five, the ALJ found that, "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the

national economy that [Plaintiff] can perform." Tr. 33-34. Therefore, the ALJ concluded that Plaintiff is not disabled. Tr. 34-35.

### C. ANALYSIS

In his motion, Plaintiff argues that remand is warranted for further proceedings because the ALJ's RFC determination is not supported by substantial evidence. Plaintiff appears to be ultimately concerned with the ALJ's determination that Plaintiff is able to perform a reduced range of "light" work – i.e., that Plaintiff is not limited to performing "sedentary" work.[1] In particular, Plaintiff takes issue with the ALJ's determination that he can stand and walk 4 hours in an 8-hour workday. *See* [DE 8] at 7 (emphasis added) ("The ALJ's RFC is not supported by substantial evidence as she failed to account for total limiting effects of Plaintiff's severe impairments of diabetes mellitus (including non-pressure chronic ulcer of the right toe) and neuropathy *impacting his ability to stand/walk*.").

Social security regulations explain that "[t]o determine the physical exertion requirements of work in the national economy," the Social Security Administration (SSA) classifies jobs as "sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 416.967. "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." § 416.967(a). For sedentary jobs, "standing or walking should generally total no more than about 2 hours of an 8-hour workday." SSR 83-10. Light jobs, on the other hand, often require "a good deal of walking or standing." § 416.967(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. Thus, by finding that Plaintiff can stand and walk 4 hours in an 8-hour workday, the ALJ determined that – although

---

[1] "A sedentary job classification is the lowest physical exertion requirement that an ALJ can assess in making a disability determination." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1273 (11th Cir. 2024) (citing 20 C.F.R. § 404.1567(a)).

Plaintiff cannot perform the full range of light work – Plaintiff is not limited to only sedentary jobs.

Understandably, Plaintiff wanted the ALJ to find that he is limited to performing sedentary jobs. That is because, given Plaintiff's age, limited education, and lack of past relevant work, a sedentary limitation would have required a finding of disability under SSA grids. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.09.

Again, the errors Plaintiff alleges here concern the ALJ's RFC determination at the outset of step four. In conducting the RFC inquiry, an ALJ is required to consider "all relevant medical and other evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). "Evidence includes (1) statements from medical sources and (2) descriptions and observations from the claimant and the claimant's 'family, neighbors, friends, or other persons.'" *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1273 (11th Cir. 2024) (citing and quoting 20 C.F.R. § 404.1545(a)(3)); *see also* 20 C.F.R. § 416.945(a)(3). "A claimant bears the burden of proof for establishing the existence of a disability and must produce evidence in support of a claim, including at the RFC stage." *Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 852 (11th Cir. 2018) (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3))); *see also Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) ("A claimant bears the burden of establishing his RFC." (citing *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019))).

Plaintiff contends the ALJ erred in determining his RFC and that the ALJ's determination is not supported by substantial evidence (especially insofar as it concerns Plaintiff's ability to stand and walk). Plaintiff's contentions of error largely pertain to the ALJ's decision to discount Plaintiff's subjective complaints. To some extent, Plaintiff also implies the ALJ erred in

evaluating the Medical Source Statement of APRN Fernique Jean-Jacques (Tr. 1324-26).  As discussed in Section 1 below, the ALJ did not err in evaluating APRN Jean-Jacques' medical source statement.  As discussed in Section 2 below, the ALJ's evaluation of Plaintiff's subjective complaints (and the ALJ's ultimate RFC determination) are supported by substantial evidence.

### 1.  APRN Jean-Jacques' Medical Source Statement

It is unclear from Plaintiff's Motion how Plaintiff contends the ALJ erred in evaluating APRN Jean-Jacques' opinion (if at all).  The only argument regarding APRN Jean-Jacques' opinion that the Court can parse out from Plaintiff's Motion is Plaintiff's assertion that: "An ALJ's summarizing a set of medical records, followed by a conclusory statement, is not analysis or explanation as to *how* the longitudinal records are inconsistent with APRN Jean-Jacques's opinion and Plaintiff's self-described limitations, i.e., does not provide a basis for meaningful judicial review." [DE 8] at 11.  However, as discussed herein, the ALJ's discussion regarding APRN Jean-Jacques' opinion makes it quite easy for the Court to meaningfully review the ALJ's treatment of that opinion.

The ALJ applied the correct legal standards when evaluating APRN Jean-Jacques' medical source statement, and the ALJ's evaluation is supported by substantial evidence.  An ALJ's evaluation of a medical opinion is governed by 20 C.F.R. § 416.920c.  Under that regulation, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  § 416.920c(a).  Rather, the ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings based upon five factors: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict' the opinion" or finding.  *Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5,

2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)).   Supportability and consistency are the most important factors.  § 416.920c(a).

Although an ALJ is not required to provide a specific weight to medical opinions, the ALJ still needs to articulate how persuasive the ALJ finds medical opinions and prior administrative medical findings to be.  § 416.920c(b).  Nonetheless, the regulations make clear that in doing so, an ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually." § 416.920c(b)(1).  In other words, if a single source offers multiple medical opinions or multiple administrative medical findings, an ALJ only needs to collectively address the source's opinions or findings in a single analysis rather than including a separate analysis for each opinion or finding.  § 416.920c(b)(1). In that analysis, the ALJ must explain how she considered the factors of supportability and consistency, but the ALJ is generally not required to explain how she considered the other three factors.  § 416.920c(b)(2)-(3).  Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  § 416.920c(c)(1).  Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  § 416.920c(c)(2).  While an ALJ must "state with at least some measure of clarity the grounds for his decision," the ALJ is not required to use any "magic words" when evaluating medical opinions. *Klarner v. Comm'r of Soc. Sec.*, No. 24-11613, 2025 WL 1753548, at *13 (11th Cir. June 25,

2025); *see also Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1276 n.14 (11th Cir. 2024); *Ball v. Soc. Sec. Admin., Comm'r*, No. 24-12496, 2025 WL 1010204, at *3 (11th Cir. Apr. 4, 2025).

In discussing APRN Jean-Jacques' medical source statement, Plaintiff's Motion references APRN Jean-Jacques' opinions that Plaintiff: (1) would miss work at least 5 days per month due to his diabetes; (2) has extreme difficulties reporting to work on time; (3) has extreme deficiencies of concentration, persistence, or pace, resulting in failure to complete tasks in a timely manner; and (4) requires the use of a walker. *See* [DE 8] at 5, 10; *see also* Tr. 1324-26. Although the ALJ was not required to articulate how she considered each opinion from APRN Jean-Jacques individually, *see* § 416.920c(b)(1), the ALJ did specifically reference each of the foregoing opinions (and others). *See* Tr. 29-30.

After summarizing the content of APRN Jean-Jacques' medical source statement, the ALJ explained that she found APRN Jean-Jacques' opinion of extreme limitations unpersuasive. Tr. 30. To support that determination, the ALJ explained how both the supportability and consistency factors rendered the opinion unpersuasive. The ALJ explained, *inter alia*, that APRN Jean-Jacques' opinion: (1) "is unsupported by the overall medical evidence of record that documents on November 7, 2023, the claimant's report that he was independent in his activities of daily living"; (2) "is not supported by or consistent with her treatment notes or other objective evidence of record, which documents numerous physical and mental status exams that were normal" (including numerous physical exams showing Plaintiff "has an intact/normal gait and normal stance"); (3) is "not explain[ed] or support[ed] . . . with any explanation or objective findings; and (4) "regarding the use of a walker for ambulation is [] not consistent with her treatment notes which are generally void of any mention of claimant using a walker or other assistive device, or other evidence of record" (including evidence regarding a consultative examination where Plaintiff "was able to get

9

up and down from the exam table independently with diffuse pain complaints" and "ambulated in the office with an independent, slow but steady gait"). Tr. 30. With respect to the use of a walker, the ALJ noted that *the only time* APRN Jean Jacques' treatment notes ever indicated Plaintiff was using a walker was in July 2024, shortly after Plaintiff underwent debridement of his toe. Tr. 30. That was 8 months *after* APRN Jean-Jacques completed her medical source statement. Moreover, the ALJ observed that APRN Jean-Jacques noted Plaintiff did not need assistance performing the task of walking on various occasions. Tr. 30.

As is evident from the foregoing and from the ALJ's decision, the ALJ assessed the persuasiveness of APRN Jean-Jacques' opinion and explicitly discussed why, in the ALJ's view, the factors of supportability and consistency rendered the opinion unpersuasive. Thus, the ALJ did precisely what she was required to do under § 416.920c. Nevertheless, Plaintiff seems to imply that the ALJ was wrong to rely on the consultative examination records regarding Plaintiff ambulating "with an independent, slow but steady gait." *See* [DE 8] at 12. Plaintiff emphasizes that his gait was slow. *See id.* However, the ALJ reasonably weighed the evidence regarding the consultative examination, and the ALJ reasonably concluded that such evidence was inconsistent with APRN Jean-Jacques' opinion of extreme limitations. Moreover, that was only one of several reasons the ALJ provided for discounting the persuasiveness of APRN Jean-Jacques' opinion. Significantly, "[u]nder a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports [his] position; []he must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). And Plaintiff has plainly failed to demonstrate the absence of substantial evidence supporting the ALJ's conclusion that APRN Jean-Jacques' opinion was not

persuasive – a conclusion that was based on multiple different reasons beyond the consultative examination.

One additional point is worth mentioning given that, as discussed above, Plaintiff's ultimate contention of error here concerns the ALJ not finding greater limitations on Plaintiff's ability to stand and walk.  The ALJ explained that "Nurse Jean-Jacques' opinion is largely 'no opinion.'"  Tr. 30.  As the ALJ noted, "Nurse Jean-Jacques gave no opinion as to [among other things] the claimant's ability to sit; whether the claimant would require the ability to shift between sitting, standing and walking at will; or whether he requires the ability to lie down during an 8-hour workday."  Tr. 29.  Notably, when the medical source statement asked APRN Jean-Jacques to opine on the number of hours that Plaintiff could stand and walk during an 8-hour workday (both "total" hours and "hours at a time"), APRN Jean-Jacques checked a box stating, "no opinion."  Tr. 1325.  So when it comes to Plaintiff's ability to stand and walk (i.e., Plaintiff's ultimate contention of error in this action), APRN Jean-Jacques did not even provide an opinion.  While APRN Jean-Jacques' opinion regarding the use of a walker is obviously also pertinent to Plaintiff's ability to stand and walk, the fact remains that the ALJ's decision to discount APRN Jean-Jacques' opinion is supported by substantial evidence for the reasons discussed above.

### 2.  Plaintiff's Subjective Complaints & RFC

Plaintiff has failed to establish error with respect to the ALJ's evaluation of his subjective complaints and the ALJ's ultimate RFC determination.  When a claimant attempts to prove that he is disabled by providing testimony regarding his pain or other symptoms, he must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Raper*, 89 F.4th at 1277

(quoting *Wilson*, 284 F.3d at 1225).  This standard applies to both complaints regarding subjective pain and complaints regarding other subjective conditions.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the objective medical evidence shows that a claimant's impairment "could reasonably be expected to produce" the pain or symptoms alleged by the claimant, "the ALJ must evaluate the intensity and persistence of the claimant's alleged pain and consider 'all of the available evidence' from both medical and nonmedical sources."  *Harvey v. Soc. Sec. Admin., Comm'r*, No. 22-10281, 2022 WL 17175649, at *3 (11th Cir. Nov. 23, 2022) (citing 20 C.F.R. § 416.929(c)(1)).

ALJs consider the following factors when evaluating a claimant's statements regarding the intensity of his symptoms:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) the claimant's treatments other than medication; (6) any measures used to relieve pain; and (7) other factors concerning a claimant's functional limitations and restrictions based on pain or other symptoms.

*Raper*, 89 F.4th at 1277 (citing 20 C.F.R. § 416.929(c)(3)(i)-(vii)).  "The ALJ must consider these factors in relation to other evidence in the record and whether the claimant's statements conflict with other evidence."  *Id.* (citing 20 C.F.R. § 416.929(c)(4)).  Nonetheless, an "ALJ need not discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for us to conclude that the ALJ considered the claimant's medical condition as a whole."  *Id.* (citing *Dyer*, 395 F.3d at 1210).

In order to discredit a claimant's subjective complaints, an ALJ must "clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms."  *Dyer*, 395 F.3d at 1210 (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  Provided that an ALJ does so and that the ALJ's findings are supported by substantial

evidence, courts will not disturb the ALJ's determination.  *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("[C]redibility determinations are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence." (internal citations omitted)).

Here, the ALJ preliminarily made clear that she conducted her subjective symptom analysis in accordance with 20 C.F.R. § 416.929 and SSR 16-3p.  Tr. 26.  She also set forth the pain standard and provided a summary of Plaintiff's hearing testimony.  *See* Tr. 26-27.  Based on her consideration of the evidence, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Tr. 28.  Thus, the ALJ made an explicit credibility finding.  She then proceeded to explain why she found as she did.

For instance, the ALJ discussed Plaintiff's testimony regarding his asserted gait difficulties, need to use a walker, and difficulty standing, but the ALJ found such testimony to be inconsistent with the evidence of record, which "repeatedly documents evidence of the claimant's normal gait and station on examination and no mention of use of a walker for ambulation or standing."  Tr. 32.  And the ALJ explained why, in her view, "the overall record does not support any allegation that the claimant requires an assistive device for ambulation."  Tr. 32.  The ALJ also noted several instances in the record where Plaintiff denied having gait difficulties or gait dysfunction.  Tr. 29.  Additionally, the ALJ emphasized that the record contained "significant evidence of grossly intact motor strength, normal vibratory sensation, sharp sensation, and deep tendon reflexes in addition to the evidence of intact/normal gait and station and overall normal exams notwithstanding"

Plaintiff's conditions and impairments.  Tr. 28, 33.  Moreover, the ALJ pointed to evidence reflecting that Plaintiff's "diabetes mellitus and foot symptom of paresthesia are stable."  Tr. 29.

In arriving at her conclusion, the ALJ also considered the consultative examination performed by Dr. Mark Rogovin, DO on March 21, 2024.  *See* Tr. 29-30.  The ALJ recognized Dr. Rogovin's observation that Plaintiff "had approximately a quarter sized tri-open wound of the medial and inferior aspect of the right first toe and that it appeared to show exposed muscle and bone."  Tr. 29.  Nevertheless, she noted that "there were no signs of erythema, discharge, bleeding or odor."  Tr. 29.  Moreover, the ALJ relied on Dr. Rogovin's observation that Plaintiff "was able to get up and down from the exam table independently with diffuse pain complaints" and "ambulate in the office with independent, slow, and steady gait although he limped complaining of right ankle pain with weightbearing ambulation."  Tr. 29.  The ALJ also noted that Plaintiff demonstrated grossly intact strength of the bilateral upper and lower extremities."  Tr. 29.

One of the most significant pieces of support in the record for the ALJ's determination regarding Plaintiff's RFC, and in particular, Plaintiff's ability to stand and walk, is the prior administrative medical findings.  Unlike APRN Jean Jacques, who offered "no opinion" on the number of hours that Plaintiff could stand and walk during an 8-hour workday,[2] the state agency medical consultants found that Plaintiff has the ability to stand and/or walk (with normal breaks) for a total of approximately 6 hours in an 8-hour workday.  Tr. 121, 130.  But the ALJ actually found Plaintiff more limited (and therefore found the prior administrative medical findings partially persuasive).  Tr. 31.  Again, the ALJ limited Plaintiff's RFC to standing/walking up to 4 hours in an 8-hour workday.  And she specifically found that Plaintiff was more limited in standing

---

[2] As the ALJ noted in her decision, even Plaintiff himself "was unable to provide specific restrictions regarding his ability to sit, stand, bend, pull, push, reach, lift, climb, walk and lie down" notwithstanding his report of his activities of daily living being limited.  Tr. 29.

and walking – than what the consultants assessed – because of Plaintiff's chronic diabetic ulcers of the feet.  Tr. 31.  In other words, the ALJ weighed all of the evidence and determined Plaintiff's RFC after considering all of the evidence and Plaintiff's condition as a whole.

In arguing that the ALJ's decision is not supported by substantial evidence, Plaintiff contends that the ALJ merely offers conclusory statements without explanation to support her determination.  For instance, Plaintiff focuses on the ALJ's statements that Plaintiff's treatment has largely been routine or conservative in nature and that the record does not contain evidence of end stage organ failure.  Tr. 28.  As to the first statement, the ALJ explained that Plaintiff was conservatively treated with medications.  Tr. 28.  Notably, the ALJ did what she was supposed to do, as ALJs should consider medications claimants take to alleviate symptoms, as well as other treatments.  § 416.929(c)(3).  And the ALJ noted – pointing to Plaintiff's own pain questionnaire (Tr. 321) – that Plaintiff is able to relieve pain (without side effects) using Gabapentin, "thus indicating no interference with his ability to perform work activities within [his] RFC."  Tr. 33.  None of this is to say that the ALJ's rationale regarding conservative or routine treatment was enough on its own to discount Plaintiff's subjective complaints.  But it is a relevant consideration under the applicable regulation, and substantial evidence exists to support the ALJ's ultimate determination given all of the other reasons that she explicitly articulated.  As to the second statement – regarding end stage organ failure – I agree with Plaintiff that the statement does nothing to reasonably support the ALJ's determination.  But the one isolated statement does not undermine the ALJ's determination, especially given all of the evidence on which the ALJ relied and the multiple reasons she offered to support her determination.

Furthermore, while Plaintiff nitpicks some of the ALJ's statements, Plaintiff has failed to show that the ALJs ultimate determination is not supported by substantial evidence.  Notably,

Plaintiff does not even acknowledge the prior administrative medical findings in his briefing, and those findings assessed a greater ability in standing and walking than the ALJ.  Nor does Plaintiff grapple with the ALJ's reliance on, among other things, what the ALJ characterized as "significant evidence of grossly intact motor strength, normal vibratory sensation, sharp sensation, and deep tendon reflexes in addition to the evidence of intact/normal gait and station and overall normal exams."  Tr. 28, 33.  Thus, Plaintiff has failed to show that the ALJ's evaluation of Plaintiff's subjective symptoms and ultimate RFC determination are not supported by substantial evidence.

## CONCLUSION

For the reasons discussed above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion [DE 8] is **DENIED** and Defendant's Motion [DE 11] is **GRANTED**.  The Court will enter a separate Final Judgment **affirming** the final decision of the Commissioner.

**DONE AND ORDERED** in Fort Lauderdale, Florida on this 30th day of March 2026.

Jared M. Strauss
United States Magistrate Judge